Good morning, your honors. My name is Alan Strauss and I'm representing Mr. Shardar.  We're here because Mr. Shardar had applied for asylum and it was denied. He made a motion to reopen based on new evidence and the Board of Immigration Appeals denied his motion to reopen. The new evidence is the coming into back in 2001 of the party that was persecuting the party to which Mr. Shardar belongs, is that correct? Yes, your honor. It's the Bangladesh National Party. So the BNP. And you first brought this up in 2004, is that correct? You moved to reopen? Or when? Yes. Now the BNP came back in 2001. Was there any effort between 2001 and 2004 to do something here? Or were you sort of caught in the process of appealing the IJ's 1998 decision? No, the 98 decision was still on appeal. I just might mention to that, because I think I understand where you're going, that there is case law, but I actually didn't see that as an issue until this morning. There is case law dealing with when you bring a motion to reopen based on new evidence. And the cases that I've seen all bring it, say that if it's brought, if it wasn't available at the actual hearing before the immigration judge, then it's appropriate to bring it anew. That's my understanding, but I just wanted to make sure that's correct. Yes. What was the date of the Adams affidavit? October of 2004. Right, 2004. October 20, I believe. And the Hassen case was January of 03, correct? Right. I think January. I know it was in 03. It was January of 03. Now, for a motion to reopen to be granted for asylum, you have to show the changed country conditions, and then the alien also has to show just they have prima facie eligibility for asylum. Now, the board doesn't require that the applicant actually demonstrate conclusively that he even would be eligible for asylum. It only requires that if the facts that they raise, together with the facts that are already in the case, are sufficient to show that it would be worthwhile to develop the issues further. Yeah, there seem to be two standards that seem to collide. Are they different? The reasonable likelihood standard, which seems to be closer to the merits, and then the concept of worthwhile to develop the issues further. Are they the same? I think the board sees them as the same. I think the reasonable likelihood, as I see it, is that there's a reasonable likelihood that you can establish eligibility, not actually be granted asylum, but just to establish eligibility for asylum. If it, you know, just, as I see it, if it would be worthwhile to develop the issues. Well, obviously, you like that standard. Yes. I can't blame you for that. The problem that I have with what you're saying is that this case wasn't just a case where the Board of Immigration Appeals ruled against your client, but it went to the Third Circuit. And the Third Circuit found that there was insufficient evidence to warrant asylum. And that seems to me to make more pointed the need to show new evidence that really would change things. And as I understand what you're arguing, it's just new evidence to take everything into consideration again. I'm not saying I agree with the original opinion, but I think we're bound by it. Well, as far as it goes, I mean, there is new evidence in the record. It's not just that the BNP returned to power. Dr. Adams discusses in his affidavit how since the BNP came back into power, it has been persecuting, essentially, its political opponents even more than it did the first time that it was in power. He says in a form that is more intensive and predatory. I mean, I think it's interesting that, and I'll ask your colleague to comment on this, that the BIA opinion doesn't mention at all the Adams affidavit or the affidavit from his brother, but assumes that it's really the same old story that conditions are turbulent. Whereas to my mind, the Adams affidavit and the brothers affidavit shows this targeting, conditions change as to him, because admittedly he was credible as a JP official. You put that together with the Adams affidavit, and it seems somewhat different. I agree, Your Honor. The Board did not mention any of the facts at all. It's almost, I don't think the Board should be able to insulate itself from judicial review simply by saying, we don't see anything in the record that would cause us to change our mind. But Dr. Adams talked expressly about how the BNP is going after its political opponents. It was all political, everything he talked about. And his brother certainly was not attacked because of general disruption in society. They told him they were going after his brother. You're proceeding only for asylum, correct? That's all you asked for in front of the BIA? I actually didn't do the appeal in the BIA. I thought that everything had been raised. I thought it was all three, but I could be wrong. I'm not sure. They may not have addressed everything. All right. Well, I'll go back and look at the record. The case that initially came up to us before, in 2004, where we did affirm the BIA's decision, the initial decision in 98, denying him asylum and denying his motion to reopen his removal proceedings under CAT. So maybe it is that you're under asylum only now. I would like to address something that Your Honor said about being bound by that proceeding, the first case. It's true that the court made a decision on asylum. But it's also true that the facts that are in the record haven't changed. When you look at the new evidence with what's in the record that the court can look at. Well, that doesn't help you because you've got to show that there have been changed circumstances when combined with what was previously in the record that gives you a reasonable likelihood of prevailing. But Dr. Adams did mention that charges are fabricated against people, against JATIO party members. It does? But isn't the key thing for you that you have the return to power of a party that previously had done persecuting? Yes. And according to the, if you believe what's stated in the Adams affidavit, that this party is going double time or more strongly than before in getting rid of its opponents and you couple that with the brothers affidavit that they're specifically looking for this individual or could be looking for this individual if he returned because of his prior position in the JP party. Yes. Isn't that your argument? It is, but I still believe that if you look at the facts that are already in the record and combine them together that they really, that the new evidence really is stronger. Go ahead. The, after finding, in the original proceeding, after finding your client credible, the judge also found credible that he was being prosecuted for participating in a violent act, not being persecuted. And the court of appeals affirmed that finding, said that there was evidence and that being concerned about prosecution is not persecution. Now, will that enter into the mix if they reopen and reconsider? Well, there's new evidence, remember. About the new evidence about the incident, whether it was a riot and whether he led it or not? No, there's new evidence about the tactics that the BNP uses. So it would be new evidence that this prosecution was a farce. Yes. Is that what you mean? Yes. Hmm. All right, we'll hear from you on rebuttal. Thank you. Good morning. May it please the Court. I'm Lyle Gensler. I represent the Department of Justice and the government today. Let me ask you a question in connection with the, you got this 2003 decision of the BIA in HOSIN, H-O-S-S-I-N. And it says that the reemergence of the BNP in Bangladesh would qualify as changed country circumstances. Now, I realize it's not a presidential opinion, but how can you go against your own decisions that are directly on point so clearly as has happened here and say that you're now, you're being consistent? We don't know if it is directly on point, Your Honor. Well, the BNP is back, came back in 2001, and what your opponent is arguing is that the reemergence of the BNP as a party in power is equals changed country circumstances. One, we don't know what this individual Hussein's position was with the JP, the Jatiyah party. We don't know what type of person he was. Well, Mr. Shardar's, what position did he have? Shardar was a secretary of some sort. Well, that sounds like, so he had some sort of official position. He wasn't just a member. And we don't know anything about the other individual. We don't know anything about that case other than he was defaulted. He was found removable in absentia. And the unpublished decision specifically mentions that. Is that a ground to reopen it? I don't know, but that's, it seems from that decision they were doing equity. He never had his chance in court. Mr. Shardar did. But at any rate. But shouldn't the BI at least have addressed that in this opinion? Yeah. And considered the inconsistency if there was one or explain away a lack of inconsistency? If you look at their opinion, they did. Maybe not to the court's satisfaction. But they specifically mentioned he was found in absentia, which they differentiated. No, I mean in the current opinion for Mr. Shardar. Explain why all of a sudden they're saying that his situation is, well, specifically they found that his situation is not appreciably different from the dangerous face by all his countrymen. Whereas if you read Hassan, you would say if someone's a JP official and this has occurred, then that's a changed condition. Didn't they at least have to refer to Hassan and explain it away? No. Actually they did not, Your Honor. We can analogize this to a very similar situation before this court. When this court issues a decision and then there's a motion for a panel re-hearing or re-hearing en banc, the motion's in great detail. But oftentimes the court's decision is we've considered it. No, we're not going to change our opinion. Yeah, but part of this is communication. I mean if you're going to, if you want deference and you're going to go against something that just a few years ago you decided, albeit in a non-presidential case, don't you at least have to explain it a little bit? But see, they did explain it. I mean apparently the court does not want to, does not like the explanation, but the other individual, Hossain, never had his day before the IJ. That is in the current Mr. Sharder's opinion. Well, I thought they said it was distinguishable because, and maybe we're saying the same thing, but because Mr. Hossain moved to reopen after initially abandoning his claim. What's that got to do with anything? I advance that in several ways. One of them is if you take a look at the signature of the BIA board member who did it, she's very much on her own. The point is it appears. I don't think we're taking judicial notice of that. I understand that, but apparently she was doing it. It was a one-member board decision which didn't get reviewed, and just like in a criminal trial if you have multiple defendants and each goes before a different panel, the evidence may come out a little bit differently, and two can be acquitted, one is convicted. It happens. All right. Well, I think we get your point on that. It's not worth really arguing over. If I could just add one thing. We also have a case called Filja, where we as a court have said that the reemergence of a prior party that did persecution is a changed country circumstance. And that's something that we really do need to take a look at because if you read Mr. Adams' affidavit very clearly, this isn't a new circumstance. This has been ongoing since... But post-98, July of 98, I think, was the IJ decision. What Mr. Adams states is prior to 98 and after 98, whichever party was in power turns around and goes after the other parties that are not in power. That includes the Awami League, which was in power in 1998. Mr. Shorter states in his testimony that the Awami League and the BNP both were going after him, both parties that were out of power. What Mr. Adams says is that, yes, there's been a slight change in that the BNP is a little bit more aggressive. In a form that is more intensive and predatory, a consistent pattern of abuse and political persecution for holding the JP's political opinions, perpetrated by the BNP. Your Honor, look at Joint Appendix 67 and 68. Since 1991 elections, the BNP and ALL cadres have maltreated JP workers and sought to debilitate the party. 68, under the AL government, the JP cadres remain under pressure. 70, human rights practice reports for 2000 through 2003 document continued abuses under the Awami League government and under the current BNP government. Let me stop you right there. My problem really is that the BIA opinion, if it drew the line that you're drawing, I probably would say, okay, give it the benefit of the doubt. But what it says is the respondent has not adequately demonstrated that his situation is appreciably different from the dangers faced by all his countrymen. So that he has not shown that it's anything other than the same old turbulence that there was before. But in fact, the Adams affidavit, if you buy the fact that he's a JP official, which is fact found, and you have the Adams affidavit and his brother's affidavit, the BIA is saying something that appears to be contrary to evidence that they have before them. And it's one thing not to explain away the Hassan case, but it's another to say something that seems to be totally contradictory from evidence that is before them that they don't even refer to. What do we do with that? Well, I don't know that that's exactly accurate, Your Honor. What's not accurate then? Take a look at the Adams affidavit clearly. Bangladesh is the most corrupt country in the world. Everyone in Bangladesh faces that. Bangladesh, if you want justice, if the police investigate, you pay a bribe. Doesn't matter whether you're JP, AL, anything else. These are all... it's a terrible place. How about his brother's affidavit that says he's going to be targeted? His situation's the same. The brother's affidavit's more interesting for what it doesn't say. If you look very closely, the brother... But isn't your argument not one to be made to us, but rather one to be made to the BIA or IJ, because the concern I have, picking up with Judge Randall's point, is why didn't the BIA at least address the relevant evidence that was given in favor of changed circumstances noted in the Adams affidavit and in the brother's affidavit? Just address it. So we know they saw it and considered it. Of course. It's not the government's... We didn't choose the form. No, I mean, but it's almost like... To quote Judge Becker in God Rest His Soul, it's like you're marching up San Juan Hill on this one. It's a tough decision. But we have to look at the burden of proof here. All the BIA has to do, as long as their decision was not arbitrary or irrational, contrary to law, this court has to uphold it. Now, it is the government's position that a lot of this evidence, if not all of it, all it does is document that conditions in Bangladesh remain horrible. They're no different. He was gone after political rallies were attacked in 1998. They were attacked in 2001. But I think what Adams is saying is that had he gone back after, between 1998 and 2001, there wouldn't... Yes, there are bad conditions, but he wouldn't have been persecuted by virtue of being a member of the JP party, by the Awami party. However, with the reemergence of the BNP in 2001, it's a pretty good idea that he will be persecuted for being a past operative of the JP party. And then on top of that, his brother's affidavit says, yep, and it looks like they would target him. You have to address that. I mean, even if you disagree with it, even if you exercise, despite all that, we exercise our discretion not to reopen. You've got to address it. Well, again, we look at this, the conditions are the same. Again, go back to Mr. Adams' affidavit at 67 through 70, where he's talking about the Awami League was doing the same exact thing. They were going after JP. The BNP, according to Adams, is going more after the Awami League than the JP. In other words, it's the same old story. Right. But he says it's a new phase, even against the backdrop of previous history of political violence. Now, I mean, and if the standard is that it would be worthwhile to develop the issues further at a plenary hearing on reopening. And that is the standard. Yeah. And can't you concede that given this situation, it would be worthwhile? Yeah. It's obviously not my personal beliefs. No, no, no. But I'm saying the BIA. Shouldn't they be concerned about Hassan? Shouldn't they be concerned about this? And while you're taking one look at the affidavit, you're not really addressing the other parts that are in there that would be persuasive. Again, the burden is, is it irrational? Contrary to law? Did the BIA abuse its discretion? But what we're saying to you is when you take solid evidence, well put together in two affidavits, and don't even address them or mention them, how can that be considered to be rational? Let's take this from another way. Let's go back to the original decision from this court. Compare that decision and the fact pattern in that decision to the Adams affidavit, and you'll see nothing's new. It's the same thing. I think I was on the panel in that prior case. This is very different. This is a host of new information that wasn't even considered. The only new information, the only possible new information, is that the BNP has come back into power. Come back into power and that they are intensifying their efforts to deal with their opponents. If you take a look at the original testimony from Mr. Shorter, they were intensifying their efforts even way back when, as was the Awami League. I understand it's terrible, but it's no different than what was happening. That's what the BIA was looking at, and that's what they meant when they said, everyone in Bangladesh faces the same situation. If you want justice, you bribe the cops. That's just the way it is. If you're not in power, if you're a journalist, if you're a Hindu, if you're a Christian, you have some difficulties. It's a terrible place. But technically, when you look at that, anyone in Bangladesh except possibly the prime minister would be entitled to asylum because everyone else is at the bottom of the heap and doesn't get the same type of rights we get here, but that's not the test. The test is the BIA looked at the original decision, looked at everything else that was submitted to them and said, it's not enough. And the issue is, was that an abuse of discretion? Was that irrational? The government's argument to the court would be, no, it's not. I have no further questions. I think that covers it all. Okay. Thank you very much. Thank you, Your Honor. Thank you. We'll hear from Mr. Strauss on rebuttal. I just want to make a couple of points. In discussing that Hassan case, Mr. Jentzer said that they were applying equity. The administrative agencies and the BIA is not a court of equity. Well, we won't take judicial notice of that either. Is there really anything else you want to add? Just that it's not the case that a decision is arbitrary only if it's irrational. A decision that doesn't take into consideration the facts that are presented is also arbitrary. And the board didn't look at any of the facts. Okay. Thank you. Thank you very much. We'll take the case under advisement. Appreciate counsel's appearing for argument. Thank you. And we'll take the next case.